E-FILED
Wednesday, 02 January, 2013  04:21:08 PM
Clerk, U.S. District Court, ILCD

UNITED STATES  DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| JOHN LIPSEY, | ) |
| | ) |
|        Plaintiff, | ) |
|     v. | ) |
| | )   Case No.  12-2100 |
| UNITED STATES OF AMERICA, | ) |
| et al., | ) |
|        Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff John Lipsey has filed suit, individually and as the father and next friend of Johnay Lipsey, a disabled minor, against the United States of America, Kankakee County, the Sheriff of Kankakee County, Timothy Bukowski, Michael Downey, Heather Gill, Timothy Menard, Clyde Dayhoff, Ivette Charee Sangster, and MJS Advantage, Inc., alleging that, while Johnay Lipsey's mother, Wenona White, was pregnant with Johnay and housed as a federal detainee at the Kankakee County Detention Center ("KCDC"), Defendants failed to treat and care properly for White's pregnancy and delivery of Johnay, resulting in serious and permanent injuries to Johnay.  In his First Amended Complaint (#50), Plaintiff brings claims for medical malpractice and for damages under the Illinois Family Expense Act against all Defendants, and claims of willful and wanton conduct against all defendants except the United States.  Jurisdiction is proper under 28 U.S.C. § 1346(b)(1), as the United States is a defendant. The Court has supplemental jurisdiction over Plaintiff's remaining claims, pursuant to 28 U.S.C. § 1367(a).

In September 2012, Defendants Kankakee County, Timothy Bukowski, Michael Downey, Heather Gill, Timothy Menard, Clyde Dayhoff, and Ivette Charee Sangster, filed a Motion to Dismiss (#62) and Memorandum of Law in Support (#63).  Shortly thereafter, Plaintiff filed his Response (#67).  After reviewing the parties' pleadings and memoranda, the Court recommends that Defendants' Motion to Dismiss **(#62)** be **GRANTED in part** and **DENIED in part**.

## I.  Background

The Court takes the following relevant background from Plaintiff's First Amended Complaint (#50), accepting all well-pleaded allegations as true.  *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

On September 11, 2009, while in federal custody, Wenona White, Johnay Lipsey's mother, was transferred to KCDC, which houses federal detainees pursuant to an agreement with the United States.  At that time, White was in the third trimester of her pregnancy and had a history of placental abruption,[1] hypertension, and caesarean section delivery from her prior pregnancy.  On September 22, 2009, White experienced a placental abruption.  That same day, White gave birth to Johnay, who was born with serious and permanent injuries, including severe hypoxic ischemic encephalopathy, spastic quadriplegia, cerebral palsy, and profound brain damage.

Plaintiff, in Counts II-IV, entitled "Medical Malpractice," alleges that Kankakee County; Sheriff Timothy Bukowski, warden of KCDC; the Sheriff of Kankakee County, a body politic; Michael Downey, Chief of Corrections for Kankakee County, who was in charge of operations of the KCDC; Dr. Clyde Dayhoff; Heather Gill, R.N.; Timothy Menard, P.A.; Ivette Charee Sangster, L.P.N., and MJS Advantage, Inc.:

    a. negligently managed and treated the pregnancy of Wenona White;
    b. negligently managed the prenatal care of Plaintiff's minor, JOHNAY LIPSEY;

---

[1] The Mayo Clinic explains placental abruption as follows:
Placental abruption (abruptio placentae) is an uncommon yet serious complication of pregnancy.  The placenta is a structure that develops in the uterus during pregnancy to nourish the growing baby.  If the placenta peels away from the inner wall of the uterus before delivery—either partially or completely—it's known as placental abruption.  Placental abruption can deprive the baby of oxygen and nutrients and cause heavy bleeding in the mother.  Placental abruption often happens suddenly.  Left untreated, placental abruption puts both mother and baby in jeopardy.

*Placental Abruption,* MAYO CLINIC,
http://www.mayoclinic.com/health/placental-abruption/DS00623 (last visited Dec. 11, 2012).

c. negligently monitored Plaintiff's minor, JOHNAY LIPSEY, during Wenona White's pregnancy;

d. negligently and carelessly transferred Wenona White for delivery of her pregnancy;

e. negligently monitored, examined, diagnosed, and treated Wenona White for placental abruption;

f. negligently monitored, examined, diagnosed, and treated Wenona White for pre-eclampsia;

g. negligently monitored, examined, diagnosed, and treated Wenona White for hypertension in pregnancy;

h. negligently monitored, examined, diagnosed, and treated Wenona White for vaginal hemorrhaging;

i. negligently monitored, examined, diagnosed and treated Wenona White for abdominal pain;

j. negligently took a history of Wenona White, including a history of her prior conditions during pregnancy;

k. negligently evaluated the significance of Wenona White's prior conditions and the delivery of her prior pregnancies to her condition and health care needs while in their custody;

l. negligently evaluated the risk level to Plaintiff's minor, JOHNAY LIPSEY, involved in Wenona White's pregnancy;

m. failured [sic] to respond in a proper and timely fashion to Wenona White's condition during her pregnancy

n. negligently examined Plaintiff's minor, JOHNAY LIPSEY, during Wenona White's pregnancy;

o. negligently diagnosed the condition of Plaintiff's minor, JOHNAY LIPSEY, during Wenona White's pregnancy;

p. negligently monitored the condition of Plaintiff's minor, JOHNAY LIPSEY, during Wenona White's pregnancy;

q. negligently transferred Wenona White to a hospital specializing for a delivery of her pregnancy;[2]

r. negligently informed Wenona White's health care givers on the status of her pregnancy;

s. negligently referred Wenona White and Plaintiff's minor, JOHNAY LIPSEY, to physicians for delivery of her pregnancy;

t. negligently accepted custody of Wenona White and Plaintiff's minor, JOHNAY LIPSEY, while not properly equipped, staffed, or prepared to care for or manage her pregnancy.

---

[2] It is not clear to the Court whether Plaintiff means that Defendants *failed* to transfer White to a hospital specializing in deliveries.

(#50, Count II, ¶ 22, pp. 12-13; Count III, ¶ 24, pp. 19-20; Count IV, ¶ 20, pp. 25-26.)  In Counts VI, VII, and VIII, Plaintiff seeks to recover under the Illinois Family Expense Act the cost of past and future medical expenses caused by Defendants' negligence.

In Counts IX and X, Plaintiff asserts claims for willful and wanton conduct, alleging that Defendants, "with utter indifference to and a conscious disregard for the risk of harm to Plaintiff's minor, JOHNAY LIPSEY, were willful and wanton in one or more of the following respects":

> a. knowingly refused to properly monitor, manage, examine, and treat Wenona White's pregnancy;
> b. knowingly refused to properly monitor, manage, examine, and treat Wenona White's hypertension;
> c. knowingly refused to properly monitor, manage, examine, and treat Wenona White's abdominal pain;
> d. knowingly refused to properly monitor, manage, examine, and treat Wenona White's vaginal hemorrhage;
> e. knowingly refused to properly monitor, manage, examine, and treat Wenona White's placental abruption;
> f. knowingly refused to take a proper and timely history of Wenona White;
> g. knowingly refused to properly monitor, manage, examine, and treat the prenatal condition of Plaintiff's minor, JOHNAY LIPSEY;
> h. knowingly refused to provide proper and timely prenatal care to Plaintiff's minor, JOHNAY LIPSEY, a viable fetus in her last trimester;
> i. knowingly refused to transfer Wenona White to the hospital for timely and proper delivery of her pregnancy;
> j. knowingly refused to properly treat Wenona White and Plaintiff's minor, JOHNAY LIPSEY, during Wenona White's pregnancy;
> k. knowingly refused to properly provide prenantal care to Plaintiff's minor, JOHNAY LIPSEY, during her prenatal period;
> l. knowingly refused to take reasonable and timely action to summon necessary medical care for Wenona White and Plaintiff's minor, JOHNAY LIPSEY;
> m. were otherwise willful and wanton in undertaking the management and treatment of Wenona White's pregnancy, its delivery, and the management of JOHNAY LIPSEY'S prenatal condition.

(#50, Count IX, ¶ 23, pp. 36-37; Count X, ¶ 27, pp. 44-45.)  In Counts XI and XII, Plaintiff seeks to recover under the Illinois Family Expense Act the cost of past and future medical expenses caused by Defendants' willful and wanton conduct.

## II.  Legal Standard

Defendants seek dismissal for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  A motion to dismiss for failure to state a claim serves to test the sufficiency of the complaint, not to decide the merits of the case.  *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  To survive a motion to dismiss, the complaint need only contain sufficient factual allegations to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet this standard, the allegations in the complaint must, one, be detailed enough to "give the defendant 'fair notice of what the claim is and the grounds upon which it rests,'" and, two, "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'"  *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 554, 555) (alteration omitted).

In considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations in the pleadings.  *See Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012).  The Court must evaluate the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor.  *AnchorBank*, 649 F.3d at 614.  Importantly, however, the Court does not accept as true mere legal conclusions, unsupported by factual allegations, or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678.

## III.  Discussion

### A.  Plaintiff's Claims against Sheriff Timothy Bukowski and the Sheriff of Kankakee County, a Body Politic

Plaintiff names as defendants Sheriff Timothy Bukowski, the Sheriff of Kankakee County, *and* a party Plaintiff calls "the Sheriff of Kankakee County, a body politic." (#50, Count II, ¶ 3, p. 8.)  Defendants suggest that Plaintiff's claims against "the Sheriff of Kankakee County" are duplicative of Plaintiff's claims against Sheriff Bukowski.  Plaintiff does not respond to this argument.  Absent any argument to the contrary from Plaintiff, the Court agrees

with Defendants that Sheriff Bukowski *is* the Sheriff of Kankakee County and, therefore, recommends that Defendants' Motion to Dismiss be granted as to Defendant "the Sheriff of Kankakee County, a body politic."[3]

## B.  Medical Malpractice Claims against Sheriff Bukowski and Chief Downey

Defendants argue that Plaintiff's "medical malpractice" claims against Sheriff Bukowski and Chief Downey must fail because Bukowski and Downey, unlike the other individual defendants, are not medical professionals and, thus, cannot be held liable for medical malpractice.  Defendants' argument has traction, as the standard of care owed by a doctor, nurse, or physician's assistant to a patient would not be applicable to someone who does not practice medicine.  *See Donais v. United States*, 232 F.3d 595, 598 (7th Cir. 2000) ("Under Illinois law, in a medical malpractice action, the burden is on the plaintiff to prove (1) the proper standard of care by which a physician's conduct may be measured, (2) a negligent failure to comply with the applicable standard, and (3) a resulting injury proximately caused by the physician's lack of skill or care." (citing *Purtill v. Hess*, 489 N.E.2d 867, 872 (Ill. 1986))); *Cohen v. Smith*, 648 N.E.2d 329, 332 (Ill. App. Ct. 1995) (defining malpractice as "Professional misconduct or unreasonable lack of skill.  Failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss or damage to the recipient of

---

[3] Defendants also note that it is unclear whether Bukowski is sued in his individual or official capacity.  Plaintiff may wish to address this lack of clarity as the case progresses.

those services or to those entitled to rely upon them." (quoting BLACK'S LAW DICTIONARY 959 (6th ed. 1990)) (alteration omitted)).[4]

Nevertheless, although titled "Medical Malpractice," Plaintiff's Counts II-IV include allegations that could constitute ordinary negligence, rather than medical malpractice, such as Plaintiff's allegations that Bukowski and Downey "d. negligently and carelessly transferred Wenona White for delivery of her pregnancy;" "q. negligently transferred Wenona White to a hospital specializing for a delivery of her pregnancy;" and "t. negligently accepted custody of Wenona White and Plaintiff's minor, JOHNAY LIPSEY, while not properly equipped, staffed, or prepared to care for or manage her pregnancy." The Court would elevate the form of Plaintiff's Complaint over its substance by dismissing these Counts against Bukowski and Downey simply because Plaintiff titled the Counts "medical malpractice." *See* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."). The allegations of ordinary negligence included in Counts II-IV prevent the Court from dismissing these Counts against Bukowski and Downey on the theory that they cannot be liable for medical malpractice.

## C. Tort Immunity

Defendants next urge, pursuant to myriad provisions of the Illinois Local Governmental and Governmental Employee Tort Immunity Act ("the TIA"), 745 ILCS 10/1-101 *et seq.*, that they are immune from liability in this case.

---

[4] The cases cited by Plaintiff do not support his position that a Sheriff may be held liable for medical malpractice. In *Cooper v. Office of Sheriff of Will County*, 333 F. Supp. 2d 728 (N.D. Ill. 2004), the plaintiff asserted state law claims of negligence and willful and wanton conduct, not medical malpractice, *see id.* at 732. In *Warren ex rel. Warren v. Dart*, the court found that the plaintiffs' state law claims for failure to provide medical care against the Sheriff and correctional officers did not sound in medical malpractice, but rather in ordinary negligence. No. 09-CV-3512, 2010 WL 4883923, at *10-11 (N.D. Ill. Nov. 24, 2010). Lastly, in *Thomas v. Cook County Sheriff*, 401 F. Supp. 2d 867 (N.D. Ill. 2005), the court determined that the complaint did not allege medical malpractice, *see id.* at 878.

7

As a threshold matter, the Court notes that immunity under the TIA is an affirmative defense that the local government entity or employee bears the burden of proving. *Mich. Ave. Nat'l Bank v. County of Cook*, 732 N.E.2d 528, 535 (Ill. 2000). The Seventh Circuit has cautioned that, because a motion to dismiss under Rule 12(b)(6) tests the sufficiency of the *complaint*, not the merits of any affirmative defenses that may be raised, "courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses." *See Brownmark Films v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).[5] Significantly, "a plaintiff may state a claim even though there is a defense to that claim. The mere presence of a potential affirmative defense does not render the claim for relief invalid. Further, these defenses typically turn on facts not before the court at that stage in the proceedings." *Id.*; *accord Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Nevertheless, the Seventh Circuit has affirmed orders granting motions to dismiss, on the basis of affirmative defenses, where the complaint presented all facts necessary to determine if the affirmative defense applied. *See, e.g., Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).[6] Indeed, in *Payne ex rel. Hicks v. Churchich*, 161 F.3d 1030 (7th Cir. 1998), the Seventh Circuit approved the district court's grant of dismissal on the basis of the TIA, where it was clear from the allegations of the complaint that the TIA's immunities applied. *See id.* at 1044-45.

---

[5] Federal procedure differs from Illinois procedure in this respect. Under the Illinois rules of procedure, "[i]mmunity under the Tort Immunity Act is an affirmative matter properly considered in a section 2-619 motion to dismiss." *Abruzzo v. City of Park Ridge*, 898 N.E.2d 631, 636 (Ill. 2008).

[6] The Seventh Circuit has admonished that a 12(c) motion for judgment on the pleadings, submitted after the filing of the complaint and answer, is the proper procedural device for disposing of a case on the basis of an affirmative defense "when all relevant facts are presented" before discovery. *See Brownmark Films*, 682 F.3d at 690 & n.1. A court should grant a 12(c) motion "[o]nly when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved . . . ." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). Even if Defendants had presented their arguments in a 12(c) motion, the Court would reject them for the reasons articulated in this Report and Recommendation: due to the unresolved questions regarding the applicability of the various TIA provisions identified by Defendants, it is not "beyond a doubt" that Plaintiff "cannot prove any facts to support a claim for relief."

Here, however, despite Defendants' efforts to fit Plaintiff's allegations into various provisions of the TIA, the Court, at this early stage of the case, does not have all relevant information necessary to conclude whether the TIA operates to shield Defendants from liability.

**1. Section 2-204**

Defendants argue that, because Plaintiff's only theory of liability against Sheriff Bukowski and Chief Downey is vicarious liability for the acts and omission of their employees, Plaintiff's claims against Bukowski and Downey must fail because, pursuant to Section 2-204 of the TIA, "[e]xcept as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." 745 ILCS 10/2-204. In response, Plaintiff directs the Court to *Thomas v. Cook County Sheriff*, 401 F. Supp. 2d 867 (N.D. Ill. 2005), in which the court determined that the Sheriff was a "public entity," not a "public employee," and, therefore, not subject to the protections of Section 2-204, *id.* at 875. However, the district court's interpretation in *Thomas* is at odds with Seventh Circuit precedent that interprets Section 2-204's "public employee" language to apply to Sheriffs. *Payne*, 161 F.3d at 1044 ("To the extent that [the complaint] alleges vicarious liability under state law, the Sheriff is immune under the provisions of the Illinois Tort Immunity Act." (citing 745 ILCS 10/2-204)). Therefore, if Plaintiff alleged only that Bukowski and Downey were vicariously liable for the acts of other employees at KCDC, Section 2-204 would provide them with immunity.

However, the Court disagrees with Defendants that it is evident from Plaintiff's complaint that his claims against Bukowski and Downey rely solely on a theory of vicarious liability. The extent of Bukowski and Downey's involvement in the decisions affecting White and Johnay's care is simply unclear to the Court at this point. For instance, it seems reasonable to infer that Bukowski and Downey, as warden and chief operations officer, could have been involved in deciding whether to accept custody of Wenona White, as well as in whether to authorize her transfer to a hospital. (#50, Count II, ¶ 22, pp. 12-13) (alleging that Bukowski and Downey "d. negligently and carelessly transferred Wenona White for delivery of her pregnancy;" "q. negligently transferred Wenona White to a hospital specializing for a delivery of

9

her pregnancy;" and "t. negligently accepted custody of Wenona White and Plaintiff's minor, JOHNAY LIPSEY, while not properly equipped, staffed, or prepared to care for or manage her pregnancy.").  Therefore, dismissal on the basis of Section 2-204 is not appropriate.  Defendants are free to raise this argument at summary judgment, when the facts are more fully developed.

## 2.  Section 4-103

Defendants argue that Section 4-103 immunizes them from liability for Plaintiff's allegation that Defendants "t. negligently accepted custody of Wenona White and Plaintiff's minor, JOHNAY LIPSEY, while not properly equipped, staffed, or prepared to care for or manage her pregnancy."  Section 4-103 provides, "Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein.  Nothing in this Section requires the periodic inspection of prisoners."  745 ILCS 10/4-103.  Local government entities often successfully invoke Section 4-103 in failure-to-protect cases, in which the plaintiffs allege that lack of supervision in the county jail led to the plaintiffs' injuries.  *See, e.g.*, *Jefferson v. Sheahan*, 664 N.E.2d 212, 214 (Ill. App. Ct. 1996) (4-103 immunized defendants for failure to protect plaintiff from assault by other inmate); *Bollinger v. Schneider*, 381 N.E.2d 849, 851 (Ill. App. Ct. 1978) (same).

At first blush, Plaintiff's allegation would seem to fit squarely within the language of Section 4-103, as Plaintiff refers to inadequate equipment and staffing.  However, read carefully, and in concert with Plaintiff's allegation that KCDC housed federal detainees pursuant to an agreement with the United States (#50, Count I, ¶ 9, p. 2) , Plaintiff's complaint alleges not just that Defendants' facilities, equipment, and staffing were inadequate, but that Defendants negligently agreed to accept custody, in the first place, of a pregnant woman when unprepared to take care of her.  Without more factual development, the Court finds it inappropriate to conclude, definitively, that Section 4-103 provides immunity against Plaintiff's claim that Defendants negligently accepted custody of White.

**3.  Sections 6-105, 6-106(a), and 4-105**

Defendants next contend that Sections 6-105, 6-106(a), and 4-105 shield them from liability for failure to furnish medical care for White and Johnay.  The Court first examines Sections 6-105 and 6-106(a), which immunize local government entities for injuries resulting from failures to examine a person or diagnose an illness:

> Neither a local public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others.

745 ILCS 10/6-105.

> Neither a local public entity nor a public employee acting within the scope of his employment is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental or physical illness or addiction or from failing to prescribe for mental or physical illness or addiction.

745 ILCS 10/6-106(a).  Defendants maintain that Sections 6-105 and 6-106(a) immunize them because Plaintiff's allegations "are really nothing more than assertions that Defendants' [sic] inadequately *examined* and *diagnosed* White."  (#63, p. 12.)  In support, Defendants cite several cases for the proposition that, where a public employee fails to examine a patient or diagnose a patient's condition, the employee is immunized from liability for any injuries that the undiagnosed condition causes the patient.  *See, e.g.*, *Michigan Ave. Nat. Bank v. County of Cook*, 732 N.E.2d 528, 541 (Ill. 2000); *Hemminger v. Nehring*, 927 N.E.2d 233, 239 (Ill. App. Ct. 2010); *Mabry v. County of Cook*, 733 N.E.2d 737, 745 (Ill. App. Ct. 2000).  Accordingly, Defendants contend that, because Plaintiff alleges that White's undiagnosed and untreated

conditions, including placenta previa, caused Johnay's injuries, Defendants are immune from liability.[7]

The Court disagrees with Defendants that Plaintiff's allegations may be clearly distilled into either a failure to examine or diagnose. If Defendants are correct that Johnay's injuries are attributable solely to Defendants' failure to examine White and diagnose her pregnancy complications, then Defendants would be immune under 6-105 and 6-106(a). However, Plaintiff also alleges, more generally, that Defendants inadequately responded to and treated Plaintiff's pregnancy. Anticipating this argument, Defendants admit that "prison officials were aware that White was pregnant during her brief incarceration . . . ." (#63, p. 14), but they urge that "it is not White's mere status of being pregnant that caused Johnay Lipsey's injuries." (#63, p. 14.) It is impossible for the Court to tease out the causes of Johnay's injuries at this point in this case. Drawing all reasonable inferences in Plaintiff's favor, it is plausible that, had Defendants acted on their knowledge that White was pregnant and provided adequate treatment for her pregnancy,

---

[7] The Illinois Court of Appeals adroitly described these provisions of the TIA, as follows:

We are dealing with a statute that rewards medical indolence and miscalculation resulting in harm to a patient. That is, if governmental medical personnel do not examine the patient, they are immunized. 745 ILCS 10/6-105 (2000). If they fail to make a diagnosis, or fail to prescribe treatment, or if they make an incorrect diagnosis, they are immunized. 745 ILCS 10/6-106(a) (2000). But negligent or wrongful prescribing of treatment that results in harm is not immunized. 745 ILCS 10/6-106(c) (2000). Nor is there immunity for harm caused by a negligent or wrongful act or omission in administering the prescribed treatment after a correct diagnosis. 745 ILCS 10/6-106(d) (2000).

*Antonacci v. City of Chicago*, 779 N.E.2d 428, 431 (Ill. App. Ct. 2002)

some of Johnay's injuries could have been avoided.[8]  *See Cooper v. Office of Sheriff of Will Cnty.*, 333 F. Supp. 2d 728, 733 (N.D. Ill. 2004) (rejecting defendants' 6-105 and 6-106 arguments because "plaintiff allege[d] that decedent's condition was correctly diagnosed during a physical examination before the alleged incident because the Deputies were 'aware' of decedent's condition and the decedent received medical treatment for a prior attack."); *Salgado v. Doe*, No. 08 C 2878, 2009 WL 2972477, at *5 (N.D. Ill. Sept. 10, 2009) (rejecting defendants' 6-105 and 6-106 arguments because plaintiff "allege[d] that the Officers failed to act on knowledge that [detainee] was suicidal and mentally ill, not that they failed to diagnose or misdiagnosed [detainee's] condition.").  Defendants may ultimately be correct that the evidence shows otherwise, but, at this juncture, the Court cannot determine whether Defendants' failure to examine and diagnose, alone, caused Johnay's injuries.[9]

Defendants also contend that Section 4-105 immunizes them for any failure to provide medical care to White.  Pursuant to Section 4-105,

> Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners.

---

[8] Defendants argue, "[T]here is no precedent which supports Plaintiffs' implicit suggestion that the mere status of being pregnant is a 'physical illness' or that a failure to diagnose specific prenatal conditions is not subject to the TIA." (#63, p. 15.)  In placing the burden on Plaintiff to show that pregnancy is a "physical illness" under 6-105, Defendants ignore that it is *their* burden, not Plaintiff's, to establish the applicability of their affirmative defenses.

[9] Defendants also direct the Court to Section 6-109, which provides that "Neither a local or public entity nor a public employee acting in the scope of his employment is liable for an injury resulting from the failure to admit a person to a medical facility operated or maintained by a local public entity."  745 ILCS 10/6-109.  Defendants offer little explanation of Section 6-109's relevance to this case.  Plaintiff does not allege that Defendants failed to admit her into a hospital "owned or maintained" by Kankakee County, so the Court fails to see the import of Section 6-109 here.

13

745 ILCS 10/4-105. Defendants argue that Plaintiff has "not alleged that any employee ever knew 'from observation of conditions that the prisoner was in need of immediate medical care' and then willfully and wantonly failed to take reasonable action to summon medical care." (#63, pp. 15-16.) Defendants, thus, conclude that Section 4-105 provides them with complete immunity for "failure to furnish or obtain medical care."

To begin, Defendants assume, without explanation, that Section 4-105 applies not only to jail officers and sheriff's deputies, but also to medical professionals working in a county jail. The language of Section 4-105, which refers to "summon[ing] medical care," suggests otherwise. Certainly, the medical Defendants in this case—Dr. Clyde Dayhoff; Heather Gill, R.N.; Timothy Menard, P.A.; and Ivette Charee Sangster, L.P.N.—could do more than "summon medical care"; they could provide medical care themselves. Absent a stronger argument from Defendants, who carry the burden of establishing the applicability of this defense, the Court is hesitant to find that Section 4-105 applies to medical professionals working in jails. Defendants may raise this argument again at summary judgment, with more explanation and argument in support.

Moreover, as to the non-medical Defendants, Sheriff Bukowski and Chief Downey, Plaintiff alleges sufficient facts to support an inference that Bukowski and Downey knew that White was pregnant and knowingly refused to summon medical care for her pregnancy. (#50, Count IX, ¶¶ 16, 18, p. 35.) Thus, dismissal on the basis of Section 4-105 is not warranted.

## IV. Summary

For the foregoing reasons, the Court recommends that Defendants' Motion to Dismiss **(#62)** be **GRANTED** as to Defendant "the Sheriff of Kankakee County, a body politic" and **DENIED** as to all other Defendants.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 2nd day of January, 2013.

s/DAVID G. BERNTHAL
UNITED STATES MAGISTRATE JUDGE

15